PETER HAUPTMANN TOBACCO COMPANY, a Corporation, Respondent, v. HENRY UNVER-FERTH, Appellant.

St. Louis Court of Appeals.    Argued and Submitted November 7, 1918. Opinion Filed December 3, 1918.

1. **TROVER AND CONVERSION:** Embezzlement: Evidence: Question for the Jury. In an action based on a claim that defendant had wrongfully taken money from plaintiff's safe and converted it, evidence examined, and *held* sufficient to make a case for the jury.

2. **ATTACHMENTS:** Service of Process: Specially Appointed Constable not Authorized to Serve Writ. A specially appointed constable cannot serve a writ in attachment.

3. **JUSTICES OF THE PEACE:** Jurisdiction: Appeal to Circuit Court: Effect. Under Revised Statutes 1909, sections 7568, 7579, by taking an appeal to the circuit court, defendant was in court and lost the benefit of his several pleas going to the jurisdiction of the justice over his person, and a personal judgment is valid as against defendant.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Leo S. Rassieur,* Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*Anderson, Gilbert & Hayden* for appellant.

(1) The justice never acquired any jurisdiction over defendant or his property because there was no valid process. No provision is made whereby one justice can issue a writ returnable before another justice, and such a writ is void. Secs. 7420 7640, R. S. 1909. Powers of justices and the manner of exercising the same are minutely prescribed by the statutes, and if a justice of the peace exercises any power or issues any writ for which he is not specifically given authority by the statutes, and even though he has power to issue the writ if it is not issued in the mode prescribed by the

statute, it is void.   Brownfield v. Thompson, 96 Mo. App. 341-2; Busholtz v. Ins. Co., 176 Mo. App. 467; Davidson v. Schmidt, 256 Mo. 19.   Void process, cannot be amended because there is nothing there to amend. Therefore the attempt of the plaintiff herein to amend the void affidavit and writ which was issued on June 4, 1914, by filing a new affidavit on June 18, 1914, is a nullity.   Owens v. Johns, 59 Mo. 89, 90; Corrigan v. Morris, 43 Mo. App. 461; Oxley Stave Co. v. Whitson, 34 Mo. App. 659; First Nat'l Bank v. Griffith, 192 Mo. App. 445, 446.   Any proceeding under void process is a nullity and has no legal effect.   Schell v. Leland, 45 Mo. 293.   The writ issued October 1, 1914, conferred no jurisdiction because in attachment suits, service must be had of the writ of attachment prescribed.   Sec. 7640, R. S. 1909.   And the statute does not authorize the appointment of a special constable to serve process in an attachment suit.   This authority is limited to ordinary summons cases.   Sec. 7424, R. S. 1909 (limited to art. 3 of chapter 65); Mitchell v. Shaw, 53 Mo. App. 653; Huff v. Alsup, 64 Mo. 51; Fletcher v. Wear, 81 Mo. 524; Manguld v. Donley, 89 Mo. 111; Huff v. Shepard. 58 Mo. 245.   The affidavit filed on June 4, 1914, is void and no attachment could issue thereon.   Norman v. Horn, 36 Mo. App. 419.   Where the justice court acquired no jurisdiction the circuit court acquires none on appeal.   Nance v. McHugh, 187 Mo. App. 713 and cases cited; St. Louis Union Trust Co. v. Merritt, 158 Mo. App. 657-8.   Taking of an appeal does not cure or waive defective service or want of service.   Lively v. Lumber Co., 194 S. W. 742; Swezea v. Jenkins, 186 Mo. App. 431; Meyer v. Ins. Co., 184 Mo. 481.   The writ issued September 1, 1914, was the first valid writ issued and as there was no service on either defendant or garnishee under that writ, neither defendant nor his property was ever under the court's jurisdiction.   Huff v. Shepard, 58 Mo. 245; First Nat'l Bank v. Griffith, 192 Mo. App. 444, point 3.   (2) The evidence showed that the amount involved exceeded the jurisdiction of the justice.   Admittedly the amount of cash missing exceed-

ed $500. Plaintiff has sued for $500, but has not on its statement made a remittitur. Where a claim is for over $500 a voluntary credit is necessary to give the justice jurisdiction. Trapp v. Mersman, 183 Mo. App. 512. This is true even though the judgment rendered is in the jurisdiction of the justice. Guhman v. Dunaway, 183 Mo. App. 659. (3) The findings of the court both on the plea in abatement and merits are without evidence to support them.

*D. J. O'Keefe* for respondent.

(1) The original writ of attachment and summons issued by the justice court was not void but merely erroneous, which was properly corrected by amendment on motion of plaintiff. (a) Attachment proceedings in justice courts authorized by statutes. Section 7636, R. S. 1909; Section 7639, R. S. 1909; Section 7654, R. S. 1909; Section 2328, R. S. 1909. (b) Power of justice court to allow plaintiff to file amended affidavit and to amend the court's own writs, summons or other proceedings is fully authorized by the statutes of Missouri, and the same may be amended in the circuit court on appeal. Section 2341, R. S. 1909; Section 7466, R. S. 1909; Section 7540, R. S. 1909; Section 1848, R. S. 1909; Section 1850, R. S. 1909; Musgrave v. Mott, 90 Mo. 107; Burnett v. McCluey, 92 Mo. 230. 235; Boulware v. Railroad Co., 79 Mo. 494, 495; Avery v. Good, 114 Mo. 290, 295; Maurer v. Phillips, 182 Mo. App. 440, 446; Martin v. Castle, 182 Mo. 216, 230. (2) The question of the court's jurisdiction over the person of defendant is fully established both by the record in the justice court and the voluntary appearance of defendant in the circuit court. Section 2329, R. S. 1909; Section 7568, R. S. 1909; Section 7579, R. S. 1909; Meyer v. Insurance Co., 92 Mo. App. 392; Winer v. Maness, 94 Mo. App. 162; Wenker v. Thompson, 96 Mo. App. 59; State Ex Rel. v. Mosman, 112 Mo. App. 540, 547; Boulware v. Railroad, 79 Mo. 494; Advertising Co. v. Castleman, 265 Mo. 345, 351; Advertising

Co. v. Castleman, 165 Mo. App. 575; 578; Kronski v. Railroad, 77 Mo. 362, 368. (3) The findings and judgments of the court on the plea in abatement and the merits are clearly supported by the evidence and the law. Deering & Co. v. Collins, 38 Mo. App. 80; Melling Co. v. McWilliams, 121 Mo. App. 319. (4) This being an action in trover for the wrongful conversion of property, the statement filed before the justice and the amended statement filed in the circuit court settles the question of the jurisdiction of the court, and it is immaterial if the evidence shows a conversion of a sum in excess of the amount sued for. 28 Am. & Eng. Ency. of Law, pp. 652, 653; Borden v. Hornsby, 50 Mo. 238; Denny v. Eckelkamp, 30 Mo. 140, 141; Section 7615, R. S. 1909; Bank v. Tracy, 141 Mo. 252; Snow v. Pollard, 84 Mo. App. 286; Leet v. Gatz, 124 Mo. App. 394; Lincoln Tr. Co. v. Nathan, 122 Mo. App. 319; Guhman v. Danaway, 183 Mo. App. 659, 661.

REYNOLDS, P. J.—On June 4, 1914, Peter Hauptmann Tobacco Company, respondent here, filed its statement before Robert Walker, a justice of the peace of the Fifth District of the city of St. Louis, the statement being in the form of an affidavit, to the effect that the plaintiff had a just demand against Henry Unverferth, defendant, the amount of which, and which plaintiff ought to recover after all just credits and set-offs, being $500, and that affiant has good reason to believe, and does believe, that defendant is about to move out of the State with intent to change his domicile, and that the damages for which action is brought are for injuries arising from the commission of some felony or misdemeanor, and that the debt sued for was fraudulently contracted on the part of the debtor.

While this was filed with Justice Walker, the statement, a blank form, evidently, entitles the cause as before Charles S. Luce, another justice of the same district. A bond was duly filed before Justice Walker, was approved by him and the cause entitled as be-

fore him. The writ, however, which was issued
on this and directed to the constable of the Fifth
District, directs that the constable attach Henry
Unverferth by all and singular his goods, etc., or so
much thereof as shall be sufficient to satisfy the sum of
$500, with interest and costs, "in whose hands or
possession the same may be found in the city of St.
Louis, so that he be and appear before me, Charles S.
Luce, a justice of the peace within and for the said
Fifth District of the city of St. Louis, at my office,
620 Chestnut Street, in said district, on the 18th day
of June, 1914," naming the time, and also directs that
the constable summon the defendant to appear before
the justice, at the time and place aforesaid, to answer
the action of plaintiff, and that he also summon, as
garnishee, all such persons found in the city of St.
Louis, as may be directed by plaintiff or its agent,
to appear before the said justice, at the time and
place aforesaid, to answer such interrogatories as may
be propounded. This was signed by Justice Walker.
The constable made return, on this, that he had execut-
ed the summons in the city of St. Louis on June 4,
1914, by delivering a true copy to the within named
defendant, and had further executed it in the same city,
and on the same date, by attaching as the property of
defendant the following personal property, to-wit, by
direction of plaintiff's attorney summoning the North-
western Bank and the Broadway Savings Trust Com-
pany as garnishees.

It appears that the garnishment was dismissed as
to the Northwestern Bank later and there was a return
by the constable, setting out, among other things,
service on defendant, summons to appear before the
justice, and attachment of any moneys in the hands of
the Broadway Savings Trust Company, and summoning
it as garnishee to appear, etc., on June 4, 1914.

It seems that when the error in naming Mr. Luce
as the justice before whom the cause was pending, was
discovered, that plaintiff filed a new affidavit or com-
plaint, entitling it as before Robert Walker, justice of

the peace, otherwise, however, as in the first statement or affidavit. This was sworn to by the treasurer of the plaintiff on June 18th, before a notary public, and on that date Justice Walker issued a new writ to the constable, dating it, however, June 4, 1914. On this writ the constable returned that on June 4, 1914, he served it on defendant and notified the Broadway Savings Trust Company of the attachment, also garnishing it. On September 1, 1914, however, Justice Walker issued a new writ of attachment and summons, returnable before him September 18, 1914. On this new writ the constable made this return:

"Executed the within writ of attachment and summons in the city of St. Louis, Missouri, the 8th day of September, A. D., 1914, by not finding the within named defendant, and further executed his writ in said city of St. Louis the —— day of ——, A. D., 191—, by attaching as the property of said defendant the following personal property, to-wit:"
attaching any money in the hands of the Broadway Savings Trust Company and summoning it to appear.

Under date of October 1st, Justice Walker issued a writ, directed to Special Constable Thomas Browne of the Fifth District of the city of St. Louis, commanding him to summon Henry Unverferth to appear before the Justice on October 15, 1914, to answer the complaint of the Hauptmann Tobacco Company, founded upon a writ of attachment wherein plaintiff demands $500. The writ bore this indorsement: "At the risk and request of the plaintiff, Thos. Brown, is hereby appointed Special Constable to execute and return this writ," signed, "Robert Walker," and on this the special constable Browne made return that he had served it by leaving a true copy at the usual place of abode of the defendant with a member of his family over the age of fifteen years. This return is sworn to by the special constable. On October 15th, the justice rendered judgment by default in favor of plaintiff for $500 and against defendant. It appears that the Broadway Savings Trust Company

had filed an answer admitting an account of $918.72 to the credit of the defendant. Whether any judgment was ever entered on this against the garnishee does not appear and that garnishee did not appeal. Defendant Unverferth thereupon duly appealed to the circuit court, lodging a transcript of the proceedings before the justice, it being recited in that transcript that the North-western Bank, one of the parties garnished, had been discharged as garnishee by the justice.

The defendant filed a motion in the circuit court to discharge the garnishment, setting out that he appeared solely for the purpose of making this motion; that the cause had been appealed from Justice Walker; that there is no writ of attachment in the cause; that the constable has made return that on June 4, 1914, he served a garnishment notice on the Broadway Savings Trust Company as the garnishee of the defendant; that on October 15, 1914, the justice entered an order sustaining an attachment against defendant in the sum of $500; that there was no lawful summons in the cause and no service of any summons, and that on October 15th the justice purported to render a judgment against defendant for $500; that the defendant did not appear for trial, or at any other time, in the justice's court, wherefore defendant avers that the proceedings in the justice's court are null and void and without jurisdiction and prays the court to enter an order that the garnishment be released and the funds of the defendant freed from the lien of the judgment, and that the judgment be set aside and for naught held and that the action be abated or dismissed. That motion came up for hearing before the circuit court and was submitted to the court upon the transcript, papers and matters heretofore referred to, and was overruled, plaintiff tendering a term bill of exceptions which was duly signed and filed of record. Thereafter defendant filed a plea in abatement, setting out that he appeared specially and only for this plea and for no other purpose, and under protest, and on account of the previous rulings of the court compelling him to defend the action,

and reserving to himself all exceptions to previous adverse rulings of the court. The plea in abatement specifically denies the allegations in the complaint as ground for attachment. The cause was heard before the court on this plea in abatement, plaintiff introducing its evidence, defendant appearing and introducing his, and judgment was rendered in favor of the plaintiff, defendant excepting, filing a motion for new trial and one in arrest. These motions were overruled, defendant excepting. Thereafter the cause coming on for trial on the merits, it was submitted to the court on the evidence heard on the plea in abatement. Judgment was thereupon rendered for plaintiff for $500. Filing a motion for new trial and in arrest and excepting to these being overruled, defendant has duly appealed to our court.

The material evidence for plaintiff on the merits was, in substance, as follows:

A witness for plaintiff, who was night watchman, testified that he started on duty at the place of business of plaintiff at about half past five o'clock on the evening of May 30th and watched the place until the next morning, five or ten minutes after 5 o'clock. When he went to the place there were other men there. Defendant was there and stayed there about fifteen or twenty minutes and then went upstairs where he lived with his family; did not see defendant any more after he went out. Witness, after he got through with his work, sat in the office and watched the place; saw the safe in the office when he went in and it was locked; stayed on the premises all night except when he rang the boxes. There was a dog there watching the place— a good watch dog, and bad to any strangers who might attempt to come in; would not even let the drivers come in when he was loose; the dog was tied up in the daytime and turned loose in the evening when every one was gone; witness did not leave the stable or office during the night; saw defendant again in the morning, about ten minutes to five, come down to the office. Witness asked him what was the matter,

why had he come down so early, and he said he had trouble upstairs and so he came downstairs; felt just like jumping in the river; said he had trouble with his wife—lots of trouble—lots of times; he usually came down about six in the morning; this last time that he came down was Sunday morning at about five o'clock; about two hours after that, saw defendant again. Witness was at his house and defendant came there and asked him who was there last night, and asked if "the red headed fellow" was there, and witness told him that nobody except the police officer had been there, and that the officer was in there about two minutes and went out, and witness locked the door. The red headed fellow referred to is one of the drivers. When defendant asked witness what about the red headed man, witness asked him what was the matter, and defendant said, "He must be." Witness said that he (witness) was there all night and this red headed man did not come and was not there; that nobody was there except the officer at two o'clock to use the telephone, and then witness again asked defendant what was the matter, and defendant said, "Everything, everything, the whole money is gone." Witness said, "I do not see how that is, the safe was locked, how could the money be gone in the safe there when the safe was locked?" To this defendant said, "Well, I went home, I got home and I signed my will," showing it to witness and asking him to sign it as his will, which witness did. That was seven o'clock in the morning at the house of the witness. Witness said he did not know the combination of the safe; had never been given that; had stayed at his house about ten minutes after defendant came to him. Witness told him he would go with him and they went back to the stable. There were several policemen there then. When defendant asked witness to sign his will, he asked him what was the matter and defendant said he "felt kind of funny; felt like jumping in the river." Defendant told the lieutenant of police, who was there when they went back to the stable, that he

(defendant) wanted to get some money out of the safe; did not open the safe that morning, however, while witness was there. When witness left defendant in the morning about five minutes to five o'clock defendant was the only one in the office. He said he wanted to get some ink and a pen out of the safe.

On cross-examination this witness said he did not know the combination of the safe and could not open it.

A police officer, witness for plaintiff, testified that the plaintiff's premises were on his police beat. He was going to be relieved about five minutes past seven on the day in question; saw defendant sitting with his face toward the safe "tumbling" the combination on the safe—turning it; sitting on his chair with his face toward the safe. Witness only stayed there a few seconds; wanted to be relieved; that was about 6:40 to 6:45 in the morning. When he left on that morning he met defendant at the corner of Ninth and Chambers Streets, about two and a half blocks north and a block west of the stable; he was running south on Ninth Street; it was then about two minutes of seven. Witness asked defendant what was the matter, and he said, "The money is gone out of the safe." Witness then said to him, "Why, you did not say anything when I was in there," to which defendant said, "Well, I could not get the safe open." Witness said to him, "Do you mean to tell me it is really gone," and defendant said, "Yes." Defendant was then going toward the stable and witness went back with him, first going to the station and reporting to the sergeant, and the sergeant and two other officers and himself went down to the stable. Witness said when they got to the stable and looked at the safe, the outer door of it was open and defendant told them to "look in there." They looked in and there was nothing there and defendant said, "The money is gone." He and the other officers asked the defendant about the matter and they went up to the living room occupied by defendant and his family; looked through the premises,

but could not find anything; were there about two hours and a half and did not find anything and decided that they would take defendant to the police station. and hold him for investigation, which they did, placing him in the holdover. This witness also testified that there was a vicious dog in the stable that did not permit anyone to go in there; that nobody was in there during the night when he made his trips. At ten minutes to three o'clock witness and his sergeant saw the night watchman standing in the office. The lights were burning. Witness made several trips by there but did not stop; saw the night watchman there every time he went by; saw him there at 5:30 in the morning; did not see defendant there at that time.

Another witness, treasurer for the plaintiff, testified that he occupied that position on May 30, 1914; described the safe. There was a combination on the outside and also on the inside and both locked. Defendant had the combination and the key and witness had the combination. Defendant had been employed there about seven years. His duty was to take the money from the drivers and put it in the safe and give it back to the drivers in the morning. When witness was called to the premises on the morning of the 31st the money was gone. Several police officers were there; so was the defendant. This witness also testified that the dog was there, and that it was a vicious dog that would not let anyone go in there except the watchman.

Another witness, the vice-president for plaintiff, testified that he had not known that defendant called at his house on Sunday morning; got notice of the robbery at a quarter of eight when the policeman told him of it. Defendant had been in their employ several years when they found the money and checks were gone; plaintiff had got back five or six dollars represented by a check; had tried to recall as many checks as they could, and started to trace them but only got five or six dollars of it. According to the collections that had been made from the drivers there was $601 in the

safe, about $100 of that being in checks. It was here admitted that witnesses, drivers for the plaintiff, would testify that the money turned in to defendant on that occasion would amount to $500, counsel for defendant stating that he would admit that there was $500 and some odd dollars in cash and the balance in checks; would admit that $500 was in cash, and would admit that the money was handled just the same as it always was by the defendant; that defendant never touched the money and did not have any idea of the amount but simply took the packages as they were handed in to him and put them in the safe and did not know they contained that much money.

This was the testimony for plaintiff and, as before stated, there was a verdict in favor of plaintiff and against defendant on the plea in abatement of the attachment as well as on the merits. We think this made a case for the jury, defendant's contention to the contrary.

It is a vexed and not yet entirely settled question in this State as to how far a defendant, on his appeal to the circuit court from a judgment before a justice of the peace, can challenge the jurisdiction of the justice over his person. We last had that question before us in the case of Powell v. St. Louis, I. M. & S. Ry. Co., 178 S. W. 212, a case not to be officially reported. In that case we at first held that the court erred in overruling the defendant's motion to dismiss the case and in giving judgment for plaintiff. On a motion for rehearing, however, we held on the authority of the decision of our Supreme Court in Lesan Advertising Co. v. Castleman, 265 Mo. 345, 177 S. W. 597, that our judgment first rendered in the Powell Case was wrong and quoted from the Lesan Case this (l. c. 217, 178 S. W., 265 Mo. l. c. 351).

"The jurisdiction of the person of appellant was complete by his appearance in the justice's court at the trial, by taking the appeal, and thereby going voluntarily into the circuit court (Boulware v. Railroad, 79 Mo.

494; Revised Statutes 1909, sec. 7568), and by his general appearance in the circuit court.''

And we added (171 S. W. l. c. 217):

''It is true the last words above quoted indicate a general appearance in the circuit court, which is something more than was had in the instant case; but the statute is cited as though it should be adhered to, and so, too, is the rule of Boulware v. Railroad. The Boulware Case and the statute both declare that the taking of the appeal from the justice is sufficient to operate a waiver of service of process and to enter the appearance of the party appealing. This we regard as sound law and under the Constitution it becomes our duty to affirm the judgment in conformity to the last ruling of the Supreme Court on the subject.'' (''The Boulware Case'' is in 79 Mo. 494).

Holding, however, that our decision in the Powell Case was contrary to those of the Kansas City Court of Appeals and of the Springfield Court of Appeals in cases cited, we certified the Powell Case to the Supreme Court where it is still pending and undetermined  That case, however, is not altogether parallel in its facts to the case at bar. In the case at bar defendant did not appear in the justice's court until appearing there to take an appeal. He first raised the question of the jurisdiction of the justice on account of the lack of proper service in the circuit court, there entering his appearance especially for the purpose of making that defense.

Beyond doubt there was no proper service on defendant, for a specially appointed constable cannot serve a writ in attachment. Section 7424, Revised Statutes 1909, is limited to process issued under article 3, of chapter 65. [Mangold v. Dooley, 89 Mo. 111, 1 S. W. 126; Mitchell v. Shaw, 53 Mo. App. 652.] Nor was there valid service of the writ of attachment and garnishment. The only one duly served was dated back after it was served and not reserved and the subsequent writ was not served.

But defendant went to trial on his motion to dismiss, then on his plea in abatement, then on the merits.

No such state of facts appeared in the cases either before the Kansas City or the Springfield Court of Appeals; in point of fact, in the one before the Springfield Court of Appeals, that of Swezea v. Jenkins, 186 Mo. App. 428, 171 S. W. 618, the motion to dismiss was based on the ground of the lack of jurisdiction of the justice of the peace over the subject-matter. That is open to challenge at any time, even in the appellate courts. Hence that decision of the Springfield Court of Appeals is not in point here. The cases before the Kansas City Court of Appeals are not parallel in their facts to the one here.

In the light of the statute, section 7568, Revised Statutes 1909, the concluding clause of which reads: *"Provided,* that the affidavit and bond for appeal filed shall be taken and considered by the appellate court as an entrance of appearance," as also of section 7579, Revised Statutes 1909, which reads:

"Upon the return of the justice being filed in the clerk's office, the court shall be possessed of the cause, and shall proceed to hear, try and determine the same anew, without regarding any error, defect or other imperfection in the original summons or the service thereof, or on the trial, judgment or other proceedings of the justice or constable in relation to the cause," and of the last decisions of our Supreme Court in the Lesan Advertising Company Case, supra, and Thomasson v. Merchantile Town Mutual Ins. Co., 217 Mo. 485, 116 S. W. 1092, we hold that the defendant here lost the benefit of his several pleas going to the jurisdiction of the justice over his person by going to trial on the merits.

How far this affects the question of the validity of the attachment, if that point was raised by either this defendant or by the garnishee, we are not here determining, as we do not consider that that question is before us on the appeal.

That the personal judgment is valid as against defendant, we think is clear. Whether the fund attached can be held is therefore not material, as defendant has

given a bond covering the personal judgment against him.

It follows that the judgment of the circuit court should be and it is affirmed.

*Allen* and *Becker, JJ.,* concur.

### ON MOTION FOR REHEARING.

PER CURIAM:—Motion for rehearing overruled, and cause certified to Supreme Court as we deem or: decision herein contrary to a previous decision of the Springfield Court of Appeals in Lively v. Munal-Jones Lumber Co., not yet officially reported but see 194 S. W. 741.